## THE RAILWAY REVIEW et al.

### *v.*

## GROFF DRILL AND MACHINE TOOL COMPANY.

[Submitted June 4th, 1914. Determined June 25th, 1914.]

1. On a petition of a receiver of an insolvent corporation for an assessment against stockholders, upon the ground that the manufacturing plant of said corporation was turned over to it at the time of its organization at an overvaluation based upon its then earning capacity, evidence *Held* to fail to show any such overvaluation.

2. While our statute may not contemplate the capitalization of prospective future profits, it is clear that no present earning capacity can be made the intelligent basis of valuation without due consideration of future prospects; but where there are prospects of increased future earning capacity, the present earning capacity demonstrated by actual operation clearly affords a proper basis of valuation of a business of the peculiar nature of that of the defendant corporation, if the future prospects are not also capitalized.

3. The earning capacity of the business of the defendant corporation cannot be regarded as in any sense good will.

On petition of receiver of insolvent corporation for assessment against stockholders.

*Messrs. Ott & Carr,* for the receiver.

*Messrs. Grey & Archer,* for the defendants Henry Paul and Joseph Taylor.

*Mr. Harrison H. Voorhees,* for the defendants Luther D. Lovekin and Edwin MacNeir.

LEAMING, V. C.

There can be no substantial doubt touching the facts. The plant was turned over to the corporation at a valuation based upon its earning capacity capitalized at six per cent. interest. Groff testified that a full statement of the earnings was shown to the directors in full details, and all the evidence discloses that what in fact was done was to fix a valuation based on those earnings. The earnings of the Groff plant for the year preceding had been about $1,000 per month, or $12,000 a year, and that income was capitalized on a six per cent. basis as the value of the business. While the resolution refers to the machinery as worth $45,000, it is obvious that the real basis of the valuation adopted was that an established business, including the machinery and the exclusive right to manufacture and sell the patented article in this country, which could make $12,000 a year was worth $200,000. The theory of the whole transaction clearly was that the company was to acquire from Groff assets which were producing $12,000 per year in profits and these assets were accordingly valued at $200,000.

I find nothing improper or unlawful in that valuation under the circumstances disclosed by the evidence. It may be assumed, as held in *See* v. *Heppenheimer, 69 N. J. Eq. 36,* that prospective profits, arising from the new conditions created by the transfer, are not elements that can be considered in ascertaining value for which stock can be issued. But it cannot be doubted that established past and present earning capacity may be made a proper basis of valuation in appropriate circumstances. If a house should be purchased for purposes of rental the established past and present rental value clearly affords a stable basis of its valuation for the purpose named, and in like manner the estab-

lished earning capacity of a business of the nature of the business here in question, must be regarded as a proper basis of its value, for such a business is necessarily purchased solely for and by reason of its peculiar earning capacity. Nor is it possible for any intelligent purchaser to wholly disregard future prospects. While our statute may not contemplate the capitalization of prospective future profits, it is clear that no present earning capacity can be made the intelligent basis of valuation without due consideration of future prospects; but where there are prospects of increased future earning capacity, the present earning capacity demonstrated by actual operation, clearly affords a proper basis of valuation of a business of this peculiar nature if the future prospects are not also capitalized.

The testimony in this case not only discloses that the earning capacity of the rights purchased were about $12,000 a year, as shown by profits actually earned during the year then past, but also that the future prospects of the business reasonably assured much greater profits. The patented article had become "standardized" on certain railroads and it then appeared that the demand would necessarily increase; the new conditions which arose to render the patented article less valuable could not have been then anticipated.

The earning capacity of this business cannot be regarded as in any sense good will. The article which was manufactured and from the manufacture of which the profits arose was unique and protected by a patent; that situation bears no analogy to a valuation placed upon the hope that established customers will continue to patronize the same plant to which they have theretofore extended their favors in the purchase of articles that could be elsewhere procured.

I am convinced that under the evidence in this case it cannot be properly determined by this court that an overvaluation was made.

I will advise an order denying an assessment.